Good morning, Your Honors. May it please the Court, my name is Elizabeth Lateef and I represent the defendant, Francis Aybar-Peguero, in this action. I'm asking the Court today to vacate his conviction on the money laundering count and vacate his sentence on both his drug conspiracy and money laundering counts for the reason that there's no factual basis to support the money laundering count. This Court requires that the record establish a sufficient factual basis that the funds laundered were intended to conceal, hide the source, nature, or ownership of the laundered funds. There simply wasn't that evidence here. The government argues that it's sufficient that the intent to conceal was set forth in the plea agreement or set forth in the PSR, but this is insufficient. Rule 11 is clear that you need to have a factual basis for the plea set forth in the record. That can be established from the defendant's plea colloquy. But does it matter, though, if he's, it's not just that those allegations are in the documents you mentioned, but those were read to him and he, I mean, confirmed that that was accurate, didn't he? He didn't confirm they were accurate at the plea colloquy, Your Honor. At the plea colloquy, he denied that there was an intent to conceal. He said he received the money, he put it in the bank as a way to save his money. Yes, he commingled it with his grocery store money, but he wasn't trying to hide it. He was just trying to save his money. The government points to the argument that he said, or his statement that he said, it wasn't so much hiding it from drugs, I was also working, but that's not an admission. That's not an admission you can hang the whole weight of a money laundering conviction on. It's simply insufficient. It's actually a denial. I wasn't so much hiding it from drugs. Especially, Your Honor, when you consider that he was, all of this was translated by a Spanish translator. So there may have been a little bit lost in translation. He didn't specifically say it wasn't so much hiding. That came from the interpreter. And that sentence doesn't totally make sense as interpreted. It wasn't so much hiding it from drugs. I think the meaning is probably from drug dealing, which was the question, right? Right. So he wasn't trying to hide the drug money by putting it in his bank account. No. His first answer, when the judge asked him, the district judge asked him, why did you put it in the bank? He said, I don't know. It was a way to save my money. Correct. Yes, Your Honor. And then she pressed him to say, did you want to hide it? Hide that it was from drug dealing. He said, it wasn't so much hiding it from drug dealing. I was also working. I wanted to put it with the money that I was making. So I guess your argument is that he just was treating it like any other source of income. Of course. Putting it in the bank. Yes, Your Honor. In accordance with his desire to put money in the bank. Correct. And save the money. Counsel, do you think it's an available inference from I wanted to put it with the money that I was making? Is it an available inference of an intent to conceal? I don't think it's enough, Your Honor, under the Second Circuit case law. The Second Circuit case law is clear that there has to be some evidence of an intent to conceal, an intent to hide, an intent to conceal the ownership of these funds. This was his account. How do we weigh both? Obviously, his statements are certainly, to my mind, ambiguous. But how do we weigh the statements of the defendant making the plea with the other evidence in the record? And so if the other evidence in the record, independent of what the defendant's stating, does suggest an intent to conceal, how are we to weigh that? So, Your Honor, the other evidence in the record has to be evidence that the government put before the court at the plea colloquy. How do you reconcile that statement with Lloyd? The Lloyd decision? About the PSR? Well, you said it has to be at the record at the plea, and the Lloyd decision seems to suggest that it's the prejudgment that's the relevant time frame, and look to the PSR, presumably, at the time of sentencing. There are other cases, Your Honor, that say different, including in this circuit. United States v. Murphy, which is cited in my brief, notes that facts from the PSR that were not in the record at the time of the plea. It's unclear whether we may consider them in evaluating whether there existed a factual basis for the plea under Rule 11. So I don't think that law is settled, necessarily. Go ahead. Lloyd is caught into question by that decision, or distinguishable in some way, or both. You don't think Lloyd binds us to consider the PSR? I don't think so, Your Honor. I think it's post hoc explanations that the defendant didn't necessarily agree to before the court. I think typically the court considers what's on the record at the plea to determine whether there's a sufficient factual basis for the plea. It determines at that time, at the plea call. It doesn't determine at sentencing whether there was a sufficient factual basis for the plea. It determines that at the time. It's hard to say that you make a knowing, involuntary plea at the time of the plea if you're actually objecting to one of the elements of the crime. I don't know that he objected, but he certainly didn't admit it. No, he's pushing back more than you often see. He is. He is pushing back. And he didn't admit it. And you have to admit the factual basis for the plea at the plea colloquy in order for it to satisfy Rule 11. His failure to outrightly deny it is not material. He's got to firmly admit it. Correct, Your Honor. Yes. What I'm confused about, I guess, is why the judge didn't postpone the situation and ask the lawyer to go talk to him. She did call for a recess, but she didn't really indicate that she wasn't going to take the plea based on the statements that had been made. But she could have. And then it's between the lawyer and the counsel as to how they work that out in terms of coming back and admitting consailment, I think. I mean, that's the normal sort of way. I'm kind of drawing on my district memory of when I was a district judge. But anyway, go ahead. Yes, Your Honor, I agree completely. Typically, that's the way it would work in a district court. I've done both things. I mean, he wants to accept the plea. Right. He's got a deal. Right. And so then the question is, it's against his interest, really, to deny the consailment. But on the other hand, maybe he just wanted to tell the truth. Right, and I think the truth here, Your Honor, is that there wasn't money laundering. He was literally putting money into an account. It was concealed in the sense that it was being placed with the legitimate money and put in the bag. He didn't have a separate account saying drug money. But the cases don't say we need that. The cases don't say we need a separate account. That would be pretty rare. Right. Exactly. I mean, it seems consistent with Garcia that this was insufficient because what it shows is the effect of concealment and not the intent. Correct, Your Honor, yes. He put it in his own name, in his own account with other money, and Garcia says that's not enough. What if the case were to, so if it was vacated, what would happen? If these counts were vacated? It would go back, right, and for either resentencing, the drug count could be resentenced. Correct. Right. And I think we've held it in doing that. The judge could take into account conduct that, you know, could resentence, and it need not necessarily be the same or a lower sentence. It could actually be a higher sentence. I note that you're not putting anything on the record about that. Yes. Yes, Your Honor, no. My client's aware of that. But in any event, that would happen, or they could, you know, have a new plea, a new plea arrangement. If this was vacated, it wouldn't be reversed. It would be vacated, and the parties could perhaps agree to a plea of some kind. That's correct, Your Honor. I don't believe the government has evidence of money laundering in this case, so I don't believe they could have a plea on it. I don't think my client could allocate to it. Yeah. So I believe it would be resentenced on the drug count, and hopefully a lower count given a lower guidance, I'm sorry, lower sentence given a lower guidance. So does this case turn on whether or not the PSR is, you know, is evidence of whether, you know, a basis for the judge taking the plea? She indicated that she was going to recommend the plea before she saw the PSR. Correct. Didn't she? Yes. So she made up her mind to take the plea, but didn't actually take it. No, I think she took it. At the time of the plea. I think she took the plea before the sentencing. She took the plea before sentencing? Yes. Yeah, I guess so. Yeah, she did. She took it, that's right, you're right. She took it at the time of the colloquy, after the colloquy. Correct. Yeah, on page A126. So we have taken Mr. Ibarra's guilty plea. Before that, she had talked about recommending it. I don't know what that meant, district judge recommending it to herself. Unclear. She says on page A123, I'm going to recommend that the plea of guilty be accepted and refer the case to the proclamation office for pre-sentence report. I'm not quite sure what that means. But I do know that on A126, she said, well, we've taken his guilty plea. But I don't see any particular language in which she actually said, I take the guilty plea. I assume that if she says we've taken it, they took it? Correct. She took it before the PSI. Before the PSI. I see that I'm over my time. I apologize. Thank you, Your Honors. Good morning. May it please the court. My name is Jocelyn Courtney Katsanas, and I represent the United States of America on this appeal. The district court acted within its discretion in finding that Francis Ibarra-Pegarro intended or finding a factual basis to determine that Mr. Ibarra-Pegarro intended to conceal illicit attribute of his drug proceeds. It's not abuse of discretion, is it? You said acted within her discretion. Your Honor, we're arguing that it is plain error on appeal. So, and I'll get to that in one second. So the idea being, first of all, that the What did she do? What did the district judge do to accept the concealment money order? You know, express it. Rather than saying accept the plea. So I just want to clarify something that your earlier question, I think, had confused from the record. The plea is taken in September of 2020 by a magistrate judge, Judge Martinez. So she says, I'm going to recommend to the district court judge, which is Judge Bryant. The plea is not accepted by the district court judge, and this is important, until after the final PSR. The plea is accepted by the district court judge on June 30th, 2021, which is the date in which the district court judge subsequently imposes sentence after accepting the guilty plea. I missed the fact that it was a magistrate judge. So in terms of the factual sufficiency at the time of the plea, first of all, you do have, there's no question in this case that he was sufficiently advised of the elements of the offense. The offense was laid out in the information. You had the plea petition, and then you have the plea colloquy. In the plea colloquy, it is correct that he does say that when asked directly, because the district, sorry, the magistrate judge is doing what she's supposed to be doing, asking in your own words, tell us what you did. He says, what he did with regards to the drug dealing, he says he put the money in his account. She clarifies and says, was it to hide the money? He says it was not so much as to hide, but also to. Now, Section 1956, the government only has to show that one of the purposes was concealment. It doesn't have to show that the exclusive purpose was concealment. But there has to be a factual predicate for intent to conceal. And can I ask you, before the magistrate judge took a break and sort of said confer with counsel, do you think it was sufficient before that break? Your Honor, I think that it would be a hard, it would not have been sufficient before that break. I agree with that concession, but I can't really tell what's different between what was said before that break and what was said after. So after the break, he comes back and he says, I put the money in with my legal funds. Then I, who was doing the plea below, explains the factual basis, which included the intent to conceal. So that's different from Garcia. That's different from the other cases. I'm sorry. When you, you mean said the words intent to conceal the AUSA? Yes. But what facts? Were you a trial? Did you allocate? Yes. What facts? Did you do the plea? Yes. What facts did you say in that allocution that would demonstrate intent to conceal? So we pointed to the fact that he was operating this corner mini-market as essentially a front for the drug dealing. As a front for the drug dealing. So dating back to 2018, that there had been an extensive financial investigation, and this is also laid out in the pre-sentence report, which showed that he was taking the money, he was using the business to sell drugs out of. And when they went to the business, there was literally drugs in the cash register, drugs behind the TV, dust on the products. So very little, to the extent he was doing legitimate sales, very little legitimate sales. And then he was taking the money that he earned from the drug dealing and depositing it in his business checking account. Right. How is that inconsistent with his not admitting the plea? You know, we all know basically what the story was. There were legitimate transactions at the bodega, and then there was the illegitimate transactions at the bodega. And the money was being accumulated from all this activity and being put in a bank account. I guess he had three bank accounts. I don't know whether any of the particular bank accounts were dedicated to certain things. But in any event, they were all put in there. And that's conceded. That's accepted. That's accepted by both sides. The question is, what was his intent in his mind when he put the money in with the other money? And he started off by saying he just wanted to save money. And I don't know that, I don't see where he ever really deviated from that. Your Honor, I guess two responses. First, I think the fact that he's putting the money that he earns from drug dealing in a business checking account that says corner mini market suggests that he intended to conceal it as being the profits of his corner mini market. But is that money, does the record indicate that the money is only being put into that account? My understanding is it seems like money from various sources is being put into all three accounts. I think the record indicates that there's over $100,000 in that account. The PSR explicitly lays out that that over $100,000, I think it's in paragraph 29 of the PSR, does not correspond with the profits and loss statement that he has for the mini market account. So the money, the over $110,000, or I think it's $109,000 from 2018 to 2019, does not match up with his legitimate business documents. So there is, the investigation revealed, and in fact there was even evidence in the investigation of some sort of structure in the way that he's depositing money. The investigation revealed that he was depositing the money he made from his drug dealing in an account that was a corner mini market business account. But see, I think what you're doing, I think what you're saying is, it's what you would do at trial. You'd say to the jury, you can infer from this, it's a suggestion that he's trying to hide it because he's putting it together with his money. And you may or may not persuade the jury, depending on what the defense is. But I think what you're doing is suggesting that because that inference is available, it's sufficient for the allocution, even though he's not admitting that was his intent. And I think that's plainly error. So, Your Honor, I would say two things to that. First, it is not our position, nor would it be the position of the district court, that he is denying his intent. I think we would concede, and it is certainly the case that he is saying that one of his purposes was to save the money. But he was never actually saying, did you, I mean, he wasn't denying it, perhaps, but he wasn't admitting it. And it's got to be an affirmative admission, if you're going to place any weight at all on what he said at the plea proceeding. Well, I would say that, first of all, I don't think that Rule 11, if you read the specific text of the rule, calls for the defendant to allocute to the detail that was attempted to be done here. And that's why I think the court's precedent- He's got to provide a factual basis for the plea. The district court, under the rule, has to find a factual basis for the plea before the entry of judgment. Yeah, but that's fine, because there could be other evidence. That, for instance, let's assume that he told somebody that this is my way of hiding it, and that person testified. That would be factual evidence of his intent. But when you're talking about something that's, what a person's purpose was, that's very hard. You can't just construct that because of the circumstances. If it's equally plausible that it was to just put money in the bank to save it. I mean, his admission becomes very important in this case. Your Honor, I agree with that, but I don't think the record is so clear that he's ever affirmatively denying it. And when you look at the other- Is that what the rule says? You have to deny your guilt in order to have it not be counted? Rule 11 just says, under Rule 11b-3, that the court must determine that there is a factual basis for the plea. It never says that the defendant has to allocate to that factual basis. How do you make- I mean, I see the judgment language in the rule, and I read Lloyd, and the cases before it and after it, which seem quite different than what it says. But just as a background principle matter, how do you make a knowing involuntary plea at the time of the Rule 11 conference if you don't allocate to one of the elements? Your Honor, I guess the response to that would be that the government's position is not, again, that he affirmatively denied any of the elements. So that you could- when I went on the record and said my piece about what we would prove at trial, he agreed with it. If a point should be that- Is this in A121 where you said, I guess I could just say that for the purpose of the record, it's true the defendant was mixing money? And also there's on A120, there's more language that you're dealing with here. Depositing cash amounts, which are linked to his- You're talking about the deposits, and nobody's questioning the deposits. It's just the same inference that's available, I agree. But it's not establishing intent. If the requirement to establish intent is that the defendant allocutes in his own words, I intend, then no. But I don't think that's the law. No, he doesn't have to say intend. There has to be facts from which the element is established. That's what we do in a plea colloquy. Because what we're doing is making- the whole principle is to make sure somebody's not pleading guilty to a crime they didn't commit. And boy, that's the oppression one gets here. Your Honor, I agree. That is the whole point of the plea colloquy. But I would point to the facts that I laid out. I would point to the facts in the PSR. And then just to Your Honor's point about plain error, even if this court were to find that it's error, there's still not a reasonable probability that he would not have entered into this guilty plea. And for that, the case law is clear that you consider the entire record up until the time of sentencing. And under United States v. Tulsa-Moran, if the error was revealed before the point of sentencing, it's an even higher burden for the defendant. So what's the- How do you know that- maybe if you came up with a different charge. But he's not- if he's telling the truth, maybe he's truthful and maybe he always wants to testify truthfully. I don't know. That's a possibility, you know, even in this world. And so how could he allocate to any guilty plea in the future if he didn't- to this crime, if he didn't have an intent to conceal, if he didn't believe he was concealing, if he was trying to conceal? If he did not have an intent to conceal, he would not be able to do that. But I believe that the record, including what was at the time of the plea, in the PSR, the fact that at sentencing we discussed the money laundering. He never once said, I want to withdraw my guilty plea. I didn't actually intend to conceal. No, he didn't want to withdraw his guilty plea. He liked the guilty plea. But he has to give his factual basis for the guilty plea. I mean, I'm sure it had advantages for him. And that's why he was pleading guilty. So it's not- you can't say I want to plead guilty and then admit to four of the five elements but not the fifth. You know, much as you would love to plead guilty. That's the dynamics that we're dealing with, I think. And everything that you said in your- after the break, it seems to me was consistent with where we were before. He was putting money and mixing the money up. He was saying, well, I'm doing it- I did it, not so much for that, for concealment, but because I wanted to save money. He put it in the business account because that was business for him. The bodega account, you know, contained drug money. Your Honor, at- That's where the sales occurred. At appendix 120, I said the government would establish a trial that that was done to conceal his legally owned profits and that he was using the mini market as a front. And then I went on to again describe- I mean, this isn't just someone who's selling drugs and putting money in his personal accounts. I mean, he's representing that he has a legal business, the corner mini market, for two years. He's depositing small amounts of money that are not from the corner mini market, that are from drug dealing, in his business account. I mean, he's not just saving it. There's- I think you can infer the very nature of what he's doing is what money laundering is. So- You can infer. That's right. But that- it could be- if he admitted concealing money, then I think you'd be in good shape. But he didn't- he- there's another reason to do it, and that's to save money, and he just put it all in one account. He wasn't thinking about it. He didn't have a fourth account, drugs. But- Your Honor, again, I just- the plain language of the statute is just in part to conceal. So, I mean, the fact that he was doing it to save is not- that doesn't- it doesn't have to be that he had only one purpose for doing it. Yeah, I understand. Okay. So for all these reasons, we would urge this court to affirm the sentences of the district court and the convictions on both counts. Thank you, Your Honors. Thank you. Okay. So, Your Honors, just picking- sorry- picking up on the last point my colleague made, he didn't admit in part that he was trying to hide this. He says it wasn't so much hiding it. I'm not too much in agreement when she says on page 120 the mini market was a front. He says, no, I'm not too much in agreement with that. And, again, this was translated from Spanish. To hang a money laundering conviction on the words it wasn't so much or I'm not too much as an admission I don't think is appropriate given the case law. He says there was money that came from my work, both of them were there, and the government on page 121 backs down from that argument. It says it is true that the defendant was mixing legitimate money from his work and money from drugs. So it was an affront. That's not the evidence on which the court based the factual basis for the plea. My colleague also pointed out, thankfully, that it was a magistrate judge who accepted the plea- sorry, who recommended the plea. The district court judge accepted the recommendation on July- I'm sorry, June 29th, 2021, and then the sentencing was June 30th, 2021. There's no evidence in the record that she reviewed the PSR, and that's the basis on which she concluded there was a factual basis for the plea. If there was, if that was in the record, I believe we would have a different case here. Additionally, the statements in the PSR are completely conclusory. They say Mr. Peguero, Edgar Peguero, would conceal the proceeds, or he deposited the money to conceal it. Those are conclusory statements. They're not even a factual basis, right? A factual basis would be he had this separate secret account, right? Or he gave it to his friend who put it in his nail salon company. Those are actual facts. Well, if he'd said, I'm putting it in my business account, if he told a friend, I'm putting it in my business account so it would get mixed up with my other money and that's a way to conceal it. Right. That would be evidence. Correct. That would be evidence that should be described in the PSR, but it's not. It's conclusory. He would conceal the proceeds, or he deposited to conceal it. There's no evidence he told the probation officer. I have no doubt that the government thinks he was doing it to conceal, but the government's view is irrelevant if the defendant doesn't admit to the plea, admit to concealing himself, it seems to me. I agree completely, Your Honor. On the plain error point, I also agree, as Your Honor's pointed out, that there's no basis to think that if he understood the nature of the money laundering charge that he had to admit and intend to conceal, that he wouldn't have pressed them on it, prove I intended to conceal it. I just put it in the same account to mix the money. Is there, I mean, in terms of that issue of whether or not he would have pleaded guilty based on that, I mean, is it enough to say that, is it the government's burden to say that, oh, he would have pleaded guilty anyway, or does the defense have to argue that he wouldn't have pleaded guilty had this error been brought to his attention? Yes, thank you, Your Honor. There are cases in my brief I cited where the court argues there needs to be some type of evidence in the record that would show that he would not have sort of put the government to their proof, especially where you have something like this where they pressed him and pressed him and pressed him, and the magistrate judge gave a break to go get your client an order, get them to allocute, and he still didn't allocute. This is the type of case that indicates he would not have allocated, and it did affect his substantial rights. I mean, the magistrate judge does what Judge Walker said you often do. You're not getting the factual allocution to establish it. You take a break. The defendant talks to counsel, and then they come back, and it seems like he just says the same thing again, and that's it. Do you have a sense of what's going on? Why the magistrate judge didn't persist at that point? I don't know, Your Honor. I think she maybe gave up, but that doesn't establish factual basis for the plea. It just wasn't there. It's interesting. During the break, the interpreter says, I got to go. Yes. It seems like it might have been rushed. I agree. Yes, Your Honor. That is very true. It was rushed. She had to go. They had to bring in a whole new interpreter, and there's just not a sufficient factual basis here. Did a new interpreter come in? Is that right? Somebody was away from the courthouse and had to come in. Yes. And reported that they were nine minutes away from the hearing beginning, I guess, on page 118. See, I had read that as the interpreter saying, I need to leave, Judge, and then it quickly ended after that, but it's a little hard to tell. I'm happy to take a look, Your Honor, and refer back to it. You weren't the lawyer at the time. No, I was not, Your Honor. If there are no further questions, I see my time is up. Thank you, Your Honors. All right. Thank you. We'll take it under advisement. Thank you. The next case on the calendar for argument, Ryan V., Commissioner of Social Security. Good morning, Your Honors. Alicia Elston on behalf of the appellant, Amanda Jean Ryan on behalf of her son. My sole argument, my sole principle argument here is that the ALJ in the lower court decision is not based on substantial evidence, and that the ALJ in this case failed to reconcile, discuss, and or significantly evaluate significant evidence of record that the plaintiff, in this case, met the functional equivalency of the listing in the domain of acquiring and using information. Now, in the domain of acquiring and using information, as this court is well aware, it's how well a child acquires or learns information, and how well their child uses the information that he has learned. Now, the government, in this case, repeatedly argues that the ALJ below thoroughly discussed and evaluated the entire record, explained why the evidence supported less than marked limitation in the domain of acquiring and using information. It is this position that the appellant strongly disagrees. Most significantly, there are eight areas in which the ALJ failed in discussing the entire record, and especially information and evidence that went to the sole domain of acquiring and using information. Can I just- Yes. I mean, you raised, I guess, a couple of issues- Yes. On the sort of the merits of the determination and the nature, what you characterize as the conclusory or brief nature of the decision- Yes. Putting that aside for a moment, in terms of what's actually in the record to support that there's a marked limitation in this area, in this dimension of acquiring and using information, what in the record supported that? I mean, the ALJ pointed to the fact that, I guess, the sort of-